## Byron v. Bell et al.

*(Common Pleas of New York City and County, General Term. June 2, 1890.)*

1. ACTIONS ON CONTRACTS—EVIDENCE.

A provision in a contract for the construction of a piece of railroad that the amount due the contractor shall be determined by the measurements and calcula-

tions of the chief engineer of the construction company will not prevent the contractor, who alleges that the chief engineer's estimates are fraudulent and unjust, from proving the nature, extent, and value of his work by other competent witnesses.

2. SAME.

In an action on a contract, under which the contractor is entitled to different rates of compensation for different grades of work, where the contractor has testified to the amount and value of the work alleged to have been done by him, it is error to exclude testimony by the chief engineer, whom the contract designates as the arbitrator of all questions arising under it, as to deductions that should be made from the contractor's estimate because of charges for lower grades of work at rates fixed for higher grades.

Appeal from trial term.

Action by John H. Byron against Edward T. Bell and others, as administrators, etc., of Henry R. Low, deceased, on a contract for work done, and profits on work which defendants' intestate prevented plaintiff from doing. In 1881, defendants' intestate had a contract with the New York & Scranton Construction Company to build for it about 40 miles of railroad lying in New Jersey and Pennsylvania, being part of the New York, Susquehanna & Western Railroad. In May, 1881, defendants' intestate sublet to plaintiff about four miles of this work at specified prices for rock and earth excavations. The case was originally brought against Mr. Low in his life-time, and plaintiff obtained a judgment. Mr. Low appealed to the court of appeals, and the following statement of facts is taken from the opinion of that court, (16 N. E. Rep. 45:) "By the terms of the contract, the chief engineer of the construction company [Daniel H. Wood] was made the arbitrator between the parties to settle all differences arising out of the contract, to estimate the quantities and amounts of the several kinds of work, and make monthly certificates for the same, reserving 10 per cent. thereof. The final payment to be made was provided for in these words: 'But, in case of the full completion of said work by the party of the first part, then, and upon the final estimate thereof by the said chief engineer, the said party of the second part agrees to pay within 10 days, to the party of the first part, the full amount then due, including the reserve of ten per cent.' " The court of appeals held that the engineer's certificate was a condition precedent to plaintiff's right of recovery, and reversed the judgment in his favor because he had not obtained the certificate, and because his evidence failed to show that he had ever demanded it from the chief engineer. While the action was pending in the trial term, Mr. Low died, and his administrators were instituted as defendants. On the second trial, plaintiff testified positively (folios 168–172 of the case on appeal, referred to in the opinion) that he had demanded the final estimate before the bringing of the action, and that he had repeated such demand once a week for two months. Defendants then read plaintiff's cross-examination on the former trial, wherein he stated that he had made repeated inquiry of the chief engineer whether the estimate and measurements of the division engineers had been returned to the chief engineer, so that he could make the final estimate. The defendants also read the testimony given by Mr. Low on the former trial. Mr. Low stated that the whole estimate of the amount due plaintiff under his contract was $86,354.49, and that he had been paid $86,319.38. The examination then proceeded as follows, (folios 520–522, Case on Appeal, referred to in opinion:) "*Question.* Now, what was included in that whole estimate? *Answer.* Everything up to the time of this suit. Subsequently the statement by Mr. Truesdell to the chief engineer increased the N. J. Division $2,046.83. *Q.* That is the statement that it has been said here was furnished to Mr. Wood some time in the month of March? *A.* Yes. It increased the amount, with Mr. Truesdell's estimate to Mr. Byron, of the N. J. Division,—increased the amount that would apparently be due to Mr. Byron, $2,046.83. There should be deducted from that, as I suppose, that claim of 3,000 yards of earth,

measured twice. That was included at 23 cents a yard, which was twice measured, which is $690. Of the rock taken out at Indian Ladder bluff, outside of the slope, that I had not assented to, and had not knowledge of, there were 1,158 yards that were charged to me at $1.25, when, according to the testimony of the chief engineer, it should have been taken out and removed for 50 cents. I have deducted 75 cents a yard for this amount of rock that fell down, and was removed, and thrown over into the river, 1,158 yards, which makes $868.50. There were 140 yards of riprap wall, estimated by Truesdell at $1.50 per yard, which is 50 cents too much, or $70 too much. I may state that this riprap wall is made from stone removed from the cut, and measured to him, allowed to him as rock-work in the cut, so he has been paid for that once. The aggregate of that deduction is $1,628.50, which deducted from $2,046.83 would leave $418.33, from which I deduct overpayment, $14.80, leaving due him, if the work had been certified to, $403.53." To this answer the plaintiff objected, as not responsive, after the words, "due to Mr. Byron $2,046.83," and the court sustained the objection, and struck out the objectionable part of the answer. The jury returned a verdict of $7,372.20 in plaintiff's favor; and from a judgment thereon, and an order denying a new trial on the judge's minutes, defendants appeal.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*W. J. Groo,* for appellants.   *L. Laflin Kellogg,* for respondent.

LARREMORE, C. J.   This case has been once tried and appealed to the court of appeals. The report of it in that court (*Byron* v. *Low,* 109 N. Y. 291, 16 N. E. Rep. 45) contains a statement of the facts. The appellants claim that on this new trial the objection which led to the reversal before has not been obviated; but I am of opinion that the testimony of plaintiff at folios 168 to 172, inclusive, makes out a *prima facie* case of a demand for the certificate from the chief engineer, as required by the contract. Plaintiff's direct testimony on the former trial on this point is not given, but we scarcely think appellants' contention that it was substantially the same as on the present trial can be correct. His former cross-examination, which was read on this trial, may all stand consistently enough with the direct evidence of a demand for the certificate itself, which is now given. There is other evidence from which the jury might have and did conclude that the certificate had been unreasonably refused. The case would, therefore, be analogous to the unwarrantable withholding by an architect, from a contractor, of a certificate of the completion of his contract. The contractor must, as a condition precedent to recovery at law, either produce the architect's certificate, or satisfactorily account for its absence. Similarly, in the case at bar, facts were shown from which the jury might infer that the engineer's certificate was kept back, without just cause, for an unreasonable length of time. Even under the decision of the court of last resort, therefore, we think the jury were authorized to find that the condition precedent had been complied with, and that plaintiff was not bound to wait longer before proceeding to enforce his rights, especially in view of the fact that defendant was about to depart from the country.

Many of the exceptions to rulings upon the trial we do not deem of any serious consequence. The contract provided that the work should be executed and performed under the direction of the chief engineer, or his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed should be determined. But, certainly, that could not preclude the testimony of other experts in a suit to enforce plaintiff's rights. We do not think the contract obliged plaintiff to submit to the chief engineer's decision and allowance, without the right of appeal to the court, if the former claimed that he was fraudulently or unjustly dealt with; and if, under any circumstances, he was entitled to sue, it goes without saying he had the right to call witnesses such as the assistant engineers Trues-

dell and Coons to prove the nature, extent, and value of the work. This exception was not well taken.

Considerable evidence was excepted to because it was alleged to relate to transactions with the original defendant, now deceased, but none of such exceptions seemed valid. Many of the answers complained of do not, as a matter of fact, relate either to conversations or transactions with the deceased; and such of them as may seem impliedly to do so come within the exception to the rule, made a part of the rule itself by section 829 of the Code. The testimony of the deceased defendant on the former trial was read on behalf of the defense here; and plaintiff, therefore, became entitled to give his version orally of the matters therein referred to.

The rulings as to the testimony of the said deceased, excluding a considerable portion of it, seem from the printed record rather strict; but they were within the discretion of the trial judge. In the ruling especially complained of at folios 520, 521, 522, much of the long answer was clearly irresponsive, as the court held; and, moreover, it contained conclusions and calculations. Nevertheless, we are constrained to hold that the exclusion of certain questions put to the witness Daniel H. Wood constituted error which will require a reversal. The plaintiff had testified as to the amount and value of the work alleged to have been done by him under the contract, from a statement he had made, and the same was offered and received in evidence without objection as to that method of proof. When Mr. Wood went on the stand, this paper was shown to him, and he was asked to state what deductions should be made from the amount. This question was objected to, and excluded. The following question was also put, with a similar ruling: "*Question.* What proportion of the 365 51-100 yards or riprap wall that Byron has estimated at a dollar and a half a yard,—what proportion of it should be at a dollar a yard?" This question was put to Mr. Wood later on, and excluded: "*Question.* From what you saw there on the ground at Indian Ladder bluff, what amount of rock, in your opinion, was taken out outside of the slopes, as provided for in the contract and specifications?" The contract provided that the plaintiff should be paid "for rock cut at Indian Ladder bluff one dollar and twenty-five cents per cubic yard;" and a portion of the judgment rendered depends upon the jury's estimate of how much of such rock was actually cut. It must be remembered that the contract did not specify a gross sum for plaintiff's compensation, but merely rates for different kinds of work; and therefore, both from the very nature of the agreement, and because directly raised by the answer, the amounts and kinds of work actually performed were at issue. This witness, Mr. Wood, was not only the chief engineer of the New York & Scranton Construction Company, but by the contract itself he was "appointed a common arbiter, to whom all and every question of difference between the parties, growing out of this contract, shall be referred, and whose decision shall be final and binding upon both parties." Certainly, he was a competent expert upon all these matters upon which his testimony was excluded, and such testimony would have been very relevant for the defense. It was a serious error not to allow him to testify as to the facts, as it would have been if the court, under defendant's objections, had rejected the evidence of the assistant engineers Truesdell and Coons. Defendants were, in effect, deprived of the evidence of their principal witness on a most important branch of the controversy. I cannot discover that this error was in any manner cured, and there is no alternative but to order a new trial. Judgment reversed. New trial ordered, with costs to abide the event.