### HOPPER *v.* CUTTING *et al.*

*(Common Pleas of New York City and County, General Term. April 6, 1891.)*

ACTION ON BUILDING CONTRACT.

 In an action to recover a balance on a building contract, the complaint was dis- missed, on the ground that the plaintiff, not having procured the architect's certifi- cate that the work was satisfactory, had failed to show substantial performance of the contract. It appeared that there was a dispute between plaintiff and the ar- chitect as to certain work in the cellar of the building, and the cause of water rising therein, the plaintiff maintaining that the same was caused by changes which he was directed by the architect to make. *Held*, that the case should have been sub- mitted to the jury upon the question whether or not there was a willful omission on the part of the plaintiff to substantially perform his contract. Following *Byron* v. *Bell*, 10 N. Y. Supp. 693.

Appeal from trial term.

Action by Isaac A. Hopper against Robert Fulton Cutting and another to recover $2,160, unpaid balance on a building contract of $53,729.15. The defense was that the work was not done to the satisfaction of the architect in three particulars, viz., roof, cellar, and a portion of the sidewalk. The action was dismissed, on the ground that the plaintiff had failed to show substantial

performance of the contract, by being unable to produce the architect's certificate that the work was done to his satisfaction.　The plaintiff appeals.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Phillip Carpenter,* for appellant.　*S. P. & J. McL. Nash, (Stephen P. Nash,* of counsel, ) for respondents.

DALY, C. J.　This is an appeal from a judgment dismissing the complaint. The action was to recover an unpaid balance of $2,160 upon a building contract, amounting altogether to $53,729.15.　The defense was that the work was not done to the satisfaction of the architect in three particulars, namely, the roof, the cellar, and the sidewalk.　The complaint was dismissed, on the ground that the plaintiff had failed to show substantial performance, not having shown that the work was done to the satisfaction of the architect, and not having procured the latter's certificate, as required by the contract.　It appeared from the testimony of the plaintiff that the architect offered to give him the certificate if he would fix the cellar floor at an expense of $300.　This was corroborated by the testimony of the architect himself, who was called by the plaintiff.　The plaintiff had therefore proved that the work was done to the satisfaction of the architect in all respects save the one specified, namely, the cellar floor; and the only question to be considered is whether there was a willful omission on the plaintiff's part to perform his contract in that regard. If there were, then he ought not to recover; but if such omission were unintentional and trivial, as compared with the whole contract, it was for the jury to say whether the contract was substantially performed, and the certificate of the architect unjustly withheld.　*Glacius* v. *Black,* 50 N. Y. 149; *Nolan* v. *Whitney,* 88 N. Y. 648; *Doll* v. *Noble,* 116 N. Y. 230, 22 N. E. Rep. 406; *Byron* v. *Bell,* 10 N. Y. Supp. 693; *Phillip* v. *Gallant,* 62 N. Y. 256.

The evidence shows that the original contract for the work required the cellars to be graded, and leveled with concrete to receive the asphalt.　The entire area of the cellars was then to be recovered with a thick coat of asphaltum, turning up at least three inches against the walls.　On this was to be laid four inches of concrete, to be composed of best quality,—white English Portland cement and sand, and small fragments of sharp, angular stones, not larger than would run through a two-inch ring, to be in proportion of one of cement and two of sand, and four of stone, to be wet in small quantities as used, and well rammed and carefully leveled to a finish with a half inch of Portland cement worked to a true and smooth face.　After the work had commenced, the architect instructed the plaintiff to substitute a thickness of tar paper, as prepared by the New York Coal Tar Chemical Company, in place of the coat of hot asphaltum.　On this tar paper the four inches of concrete was to be laid.　The architect saw the cellar before the concrete was laid on, and, according to the plaintiff's statement, although he knew there was water under the tar paper, he gave plaintiff no further instructions, and plaintiff went on and laid the concrete as required by the contract.　The architect testified that, before the concrete was laid upon the tar paper, he called the attention of the plaintiff to the fact that there was water underneath and above the paper, and that the paper was afloat, and that he must take up the paper and relay it.　This was denied by the plaintiff.　The concrete placed above the tar paper had to be "well rammed," as required by the contract.　The effect of ramming sharp stones on top of tar paper would be to cut through the paper if the angle of the stone happened to be up when you rammed it; and, in the proportion of one of cement to two of sand and four of stone, there would be apt to be too many stones in that position.　This was the plaintiff's testimony.　The architect swore that, if the concrete was properly laid beneath the tar paper, the sharp stones would cause little or no impression, and he would advise it.　The plaintiff swore that he had leveled off the concrete bed beneath the tar paper as described in the specifications.　When the plain-

tiff called upon the architect for his certificate the latter asked him how much it would cost to make the concrete in the cellar four inches thick, and put a brick wall around, to be sure and keep water out. The plaintiff told him $300. The architect said if he would do that he would give the certificate. The plaintiff refused unless he was to be paid for it. The architect said he would give no certificate until plaintiff had done the work. The plaintiff's explanation of the water coming into the cellar was that it did not come through the tar paper, but between the tar paper and the wall, a defect which was remedied by the expedient finally adopted of bricking all around the cellar; that he originally proposed this as necessary to the architect when the change to tar paper was suggested, and before any dispute had arisen, but he required extra pay for it; and that the architect declined to give him an order for it, and directed him to go on and carry out the orders named, viz., to substitute the paper for the bed of asphalt. It would seem from this evidence that there was a fair question for the jury as to whether there was an omission by plaintiff, willful or otherwise, to do any part of the work required by the contract, and as to whether the laying of the tar paper and the placing of the concrete above it was done in a workman-like manner. If he did the work as required by the contract and by the architect, and the $300 additional work which the architect insisted upon as a condition of his getting the certificate was intended to remedy defects for which he was not responsible, then it would seem that the withholding of the certificate, unless he complied with such condition, was unreasonable and unjust. It is true that the architect was the plaintiff's own witness, and that they contradicted each other as to whether the plaintiff was ordered to take up and relay the tar paper after the water had come through; but it was for the jury to say what the fact was, and whether the plaintiff was bound to do this or not. The judgment should be reversed, and a new trial ordered, with costs to abide the event.

All concur.