(13 Misc. Rep. 194.)

### POLLOCK v. PENNSYLVANIA IRON WORKS CO.

(Common Pleas of New York City and County, General Term.  June 3, 1895.)

1. CONTRACTS—INTERPRETATION.
   A contract by which plaintiff undertook to furnish certain steam fittings for defendant provided that the specifications and drawings should not be used to the exclusion of the instructions and directions of a designated person, but jointly with them; that the work, when finished, should be subject to the acceptance of defendant's general manager and chief engineer, and that the interpretation and full intent of the drawings should be given by defendant's engineer; and that his decision pertaining to any question which might arise should be conclusive. *Held,* that the contract did not give defendant's engineer and general manager exclusive right to determine the construction and meaning of the specifications, but only the drawings.

2. SAME—ACCEPTANCE BY THIRD PERSON.
   The provision in such contract in regard to the acceptance by defendant's engineer and general manager is equivalent to a provision that the work should be done to their satisfaction.

3. SAME—PERFORMANCE.
   Where a contract calls for "heavy, cast-iron tees," and it appears that there is in the market a specific article of commerce, known to the trade as "heavy, cast-iron tees," the contract is satisfied by furnishing such tees.

Appeal from city court, general term.

Action by Alexander Pollock against the Pennsylvania Iron Works Company. From a judgment of the city court (33 N. Y. Supp. 1133) affirming a judgment entered on a verdict in favor of plaintiff, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Andrew W. Kent, for appellant.

Charles De Hart Brower, for respondent.

BOOKSTAVER, J.  This action was brought to recover for extra work done by respondent for the appellant.  The plaintiff contracted with the defendant to do certain work in the Broadway cable power house in this city, under written specifications.  This work consisted of the furnishing and erecting of all pipes, valves, fittings, and materials necessary for the operations of the boilers, engines, heaters, and pumps in the power house.  The alleged extra work consisted in furnishing certain tees, elbows, and crosses of special design, drawings for which were furnished by defendant's engineer in charge of the work.  The specifications called for two kinds of fittings, viz. heavy cast-iron tees for one part of the work, and in another part for fittings provided with "extra heavy flanges of a design to be submitted and approved, with bolt bosses extending their full depth." Plaintiff furnished the fittings with the extra heavy flanges, and, under the specification for heavy cast-iron tees, furnished the standard or commercial heavy cast-iron tees, as the jury have found. These, however, were rejected by defendant's engineer, Mr. Moore, and thereafter he furnished a special design for these tees; and for the difference in cost between these special fittings and the commercial fitings, namely, $425.96, and interest, this action is brought. The difference in the cost of the two styles of fittings was not

disputed, and the case was sent to the jury on the question whether the fittings first furnished by the plaintiff were those required by the contract. The whole controversy turns upon the interpretation to be given to this part of the contract between the parties. The appellant contends that Mr. Moore, defendant's engineer, in charge of the work, and Mr. Grist, the general manager of appellant, had, under the provisions of the contract, exclusive right to determine the construction and meaning of the specifications, as well as the steam-fitting drawings; that, by the terms of the contract, these questions were all referred for conclusive determination to these men; and that plaintiff could not withdraw the decision of such questions from them, and refer them to the determination of a court,—citing Smith v. Brady, 17 N. Y. 176. The provisions of the contract upon which this contention rests are as follows:

"Finally, it is furthermore expressly understood that these specifications and drawings are not to be used to the exclusion of the instructions and directions of the engineer of the Pennsylvania Iron Works Company in charge, but jointly with them. * * * The work, when finished, shall be subject to the acceptance of the general manager of the Pennsylvania Iron Works Company and the chief engineer of the Broadway and Seventh Avenue Railroad Company, * * * whose acceptance will be the final acceptance of the Pennsylvania Iron Works Company.

"Note: The interpretation and the full intent of the herein mentioned steam-fitting drawings, etc., shall be given by the engineer of the Pennsylvania Iron Works Company in charge, and his decision pertaining to any question which may arise shall be conclusive."

The first criticism on these provisions is that, by the terms of the contract, the conclusiveness of the interpretation of the engineer extends only to the "steam-fitting drawings," etc., and not to the "specifications," as is apparent from the sequence of the various clauses quoted and their punctuation. And the next criticism is that the stipulation in the contract is a very rigid and dangerous one; it puts a power in the hands of one party, which may be wielded very harshly and severely against the other; and we ought not to construe it with any unnecessary liberality in favor of one who possesses it. McKenzie v. Decker, 94 N. Y. 650.

In regard to the interpretation of such contracts, the court of appeals has said:

"Where there is doubt or uncertainty as to the meaning of words or phrases used in a contract, in seeking for the intent of the parties as evidenced by the words used, the fact that a construction contended for would make the contract unreasonable, and place one of the parties entirely at the mercy of the other, may properly be taken into consideration." Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391.

Again, these provisions are only another form of the usual clause in building contracts to the effect that the work shall be done to the satisfaction of the architect, and shall be subject to his acceptance. This court has held that the "satisfaction" is a legal satisfaction, and that an architect cannot capriciously and willfully refuse to be satisfied; that, if the work has been performed substantially in accordance with the contract, the architect ought to be satisfied, and the law will hold that he is satisfied. Hopper v. Cutting (Com. Pl. N. Y.) 13 N. Y. Supp. 820; Byron v. Bell (Com.

Pl. N. Y.) 10 N. Y. Supp. 693; Highton v. Dessau (Com. Pl. N. Y.) 19 N. Y. Supp. 395; McCarthy v. Gallagher, 4 Misc. Rep. 188, 23 N. Y. Supp. 884; Boiler Co. v. Garden, 101 N. Y. 387, 4 N. E. 749; Nolan v. Whitney, 88 N. Y. 648; Bowery Nat. Bank v. Mayor, etc., 63 N. Y. 336; Doll v. Noble, 116 N. Y. 230, 22 N. E. 406. In the case under consideration the contract did not require the plaintiff to procure a certificate as a condition precedent, and hence there was no necessity of pleading an excuse for its nonproduction.

The appellant, however, contends that, notwithstanding the law on the subject, the question at issue in this case had been voluntarily submitted to the arbitration of defendant's general manager, Mr. Grist, and Mr. McNulty, the engineer of the Broadway & Seventh Avenue Railroad Company. We think, however, that it is clear from the testimony, and the jury rightly found, there was no voluntary submission to arbitration, but there was a demand that these engineers should declare themselves satisfied, and accept what plaintiff claimed was the fulfillment of the requirements of the contract.

Appellant also contends that the engineer was the sole arbitrator as to what was required by the specifications. But such a contention is fully answered by the authorities we have cited, and the contract itself refutes the claim, for it declares that the determination of the engineer is conclusive only when a question arises over the interpretation of the "steam-fitting drawings," etc. As to the specifications, the provision is that they shall not be used to the exclusion of the instructions of the engineer. The authorities cited by the appellant in support of its contention are not in point. In Butler v. Tucker, 24 Wend. 449, the question was solely one of pleading; and in Wiberly v. Matthews, 91 N. Y. 648, it relates to voluntary submission to arbitrators, while in Zimmerman v. Lutheran Church, 11 Misc. Rep. 49, 31 N. Y. Supp. 845, the architect's certificate had been given, and the owner claimed that it was erroneous, but did not charge a mistake or bad faith. If appellant's contention were well founded, the engineer could as well have demanded a 20-inch pipe where a 14-inch pipe was called for, with corresponding fittings, throughout the whole plant, and thus have enabled him to double or treble the cost of the work. It cannot be possible that such a right was intended by the parties to be given to the engineer, but that the true interpretation of it is that the powers granted to him were for the purpose of requiring a compliance with the terms of the contract, and not to enable him to alter those terms. The question, therefore, resolves itself to this: Were the "fittings," etc., furnished by the plaintiff, in accordance with the terms of the contract? The word "fittings" means tees, crosses, and elbows, or ells; and what is true of a cross is true also of a tee, an ell and a tee being each a modification of a cross. The particular clause in the contract which designated the fittings in question is as follows: "The header will be made up of 14-inch pipe, and provided with the necessary heavy cast-iron tees." The contention of the plaintiff was that there is in the market a specific article of commerce known and specifically designated in the trade as a "heavy cast-iron tee," and that it is manufactured to "withstand a regular working pressure

of 150 pounds." If there was such an article, then, when the contract called for that article by its trade name, a tender of such article was a full compliance with the contract, and no determination of an engineer could require the delivery of any other or different article. It is clear from the evidence that the fittings tendered by plaintiff were the regular commercial heavy cast-iron tees, and those demanded by Mr. Moore, the engineer, were unusual, special, and extra heavy; and the jury have found in accordance with this evidence, and their finding is conclusive upon us. Upon this appeal, therefore, these facts must be taken as established, and the defendant's appeal must rest solely upon his claim that the engineer had the right to reject what the specifications specifically called for, and upon the exceptions taken at the trial.

The first claim, we think, has been sufficiently answered, and it only remains to examine the exceptions. It follows from what has been said that the appellant's motion to dismiss the complaint, at the close of the plaintiff's case, was properly denied. Moreover, it was not renewed at the close of the whole case, and the appellant must therefore be held to have conceded that there was evidence which should have been submitted to the jury.

We do not think the court erred in the admission of expert testimony as to the commercial heavy cast-iron tees and their fittings. The objection to this kind of testimony was all based upon the assumed conclusiveness of Mr. Moore's interpretation of the contract, which, as we have shown, was not well founded.

The exception to the testimony of the witness Nason as to the character of the strain upon the steam fitting of a cable-power plant was not well taken. It is stated to be based on the witness' lack of qualification to answer. But Mr. Nason had testified to his experience as a mechanical engineer; that he was president of the Nason Manufacturing Company, and manufactured fittings for over 20 years; and that he knew what the requirements were for cable use in streets. Throughout the appellant insisted that a cable plant was different from any other known kind of plant, but, as far as we have been able on an inspection of the case to see, failed to give any evidence of such difference.

The exception to the exclusion of the testimony of a witness as to whether the fittings now in the power house could withstand a working pressure of 150 pounds cannot be sustained. The fittings now there were accepted by the defendant, and their capacity was not at issue. Defendant's counsel asked a witness the following question: "Q. For ordinary uses, as distinguished from the uses for cable purposes, under a working pressure of 150 pounds?" This was objected to, and the objection sustained, and we think properly. The question had been preceded by a question relative to the difference in the strain upon a cable plant and general commercial plants, to which the witness had replied, "I don't see how I can answer exactly;" and then asked if counsel wanted him to define the difference between an ordinary fitting, say, up to 100 or up to 150; and counsel's question was then confined to the difference between an ordinary fitting for ordinary uses and a fitting for cable purposes

working under a pressure of 150 pounds. The difference between such fittings, if any, was immaterial, for the contract specified what plaintiff was to furnish, and that controlled.

The evidence in regard to the thickness of flange fittings at the Fiftieth street power house was properly rejected. These had been put in by another party. The contract under consideration related to the Houston street power house. The object of this question evidently was to control the specifications in this case by what some other person had done at another place, under other circumstances and different specifications.

The exceptions to the charge are all based upon the contention that Mr. Moore's interpretation of the contract was binding upon the parties, which, as we have before shown, was not well founded. Upon the trial, evidence was given pro and con on the sufficiency of regular commercial tees, and this question also was submitted to the jury. This was more favorable than the defendant was strictly entitled to, for plaintiff had nothing to do with the insufficiency of the tees, or with the insufficiency of anything connected with the plant, unless such insufficiency was caused by poor material or unskillful workmanship. He was only bound to follow the provisions of the contract, and this the jury found that he did.

We, therefore, are of opinion that no reviewable error was committed on the trial of this action, and that the judgment should be affirmed, with costs. All concur.