**O. R. MITCHELL MOTORS, INC., Appellant,**

v.

**JOE MAROTTA & SONS, INC., Appellee.**

No. 13930.

Court of Civil Appeals of Texas.

San Antonio.

June 6, 1962.

Rehearing Denied July 5, 1962.

742

Walter G. Lagerquist, Jr., San Antonio, for appellant.

Knopp & Berry, Mayo J. Galindo, San Antonio, for appellee.

POPE, Justice.

Joe Marotta & Sons, Inc., the purchaser of a vehicle, recovered a judgment on a verdict for $3,347.79 against O. R. Mitchell Motors, Inc., the seller, for its breach of contract to procure a credit life insurance policy on the life of Joe Marotta, Sr., in an amount sufficient to discharge plaintiff's debt in full upon his death. This is not a suit upon an insurance contract. Southland Life Insurance Company v. Statler, 139 Tex. 496, 163 S.W.2d 623. It is a suit for breach of a contract to procure insurance for the plaintiff. Burroughs v. Bunch,

Tex.Civ.App., 210 S.W.2d 211, 214; Walcowich Bros. v. Hysaw, Tex.Civ.App., 9 S.W.2d 1046. We must determine whether (1) the evidence supports an agreement that the seller would procure the insurance and whether (2) such an agreement is legal in Texas. We affirm the judgment.

The evidence supports the finding that the seller agreed to procure the insurance. In May, 1959, Joe Marotta, Sr., plaintiff's president negotiated the purchase of a Dodge truck with Walter Krause, defendant's salesman. They reached a definite agreement, and on May 20 closed the trade. On June 12, before the due date of the first installment on the purchase price, Marotta died. Not until then did plaintiff learn that its president was not covered by insurance. It then sued Mitchell Motors, the seller, for breach of its contractual duty to procure the policy.

The terms of the trade were evidenced by a written order. These terms are further evidenced by the supporting testimony of Marotta's two sons and defendant's salesman, all of whom were present during the negotiations. The order shows that the purchaser agreed to pay $3,797 as the basic price, and shows an additional charge of $654.32, which was described on the order as "Time Charge-Rate Life Insurance." From this total of $4,451.32, a credit of $1,000 was subtracted because of a vehicle which the purchaser traded to seller. The balance of $3,451.32 was to be discharged by thirty-six monthly payments of $95.87. No one disputes these facts as they appear on the written order.

Included in the $654.32 charge was a $103.52 premium for insurance upon the life of Joe Marotta, plaintiff's president. The figures prove this. The testimony of Marotta's sons and defendant's salesman support it. The salesman qualified his testimony by stating that the seller agreed to obtain the insurance only in the event an insurer would accept Marotta as a risk. The jury did not agree with that qualification. After arriving at the terms of the contract,

Mitchell Motors, through its superior officers, approved and fully ratified the agreement. The purchaser executed a conditional sales agreement upon those terms.

Mitchell Motors sold this agreement to Southwest Acceptance Company. Mitchell Motors called upon the finance company to provide insurance on Marotta, but this was not done. The explanation for this failure was that the insurer which it contacted would not insure Marotta, who was above the age of sixty-five, and because the insured was an individual, whereas the purchaser was a corporation. No one ever informed Marotta or the plaintiff corporation that the insurance was declined. No efforts were made to procure insurance elsewhere. Unknown to plaintiff, the Southwest Acceptance Company on June 3, credited the plaintiff's account with $103.53, which was the amount charged for the life insurance premiums.

The written order further evidenced the terms of the agreement by stating, "This order contains the entire agreement affecting this purchase, and no other agreement, understanding, representation or warranty of any nature concerning same has been made or entered into or is a part of this transaction. It has been explained to me that I am not required to include any insurance in this transaction except physical damage. Other insurance included if any, are provided with my full knowledge and consent." The seller, therefore, emphasized and made clear to the purchaser that he was being charged for credit life insurance. From all this evidence, Mitchell Motors charged the purchaser for credit life insurance and agreed to procure it. Appleman, Insurance Law and Practice, §§ 2270, 2271; 44 C.J.S. Insurance § 225.

■ The contract to procure insurance was not illegal. Obligations to procure insurance coverage are not unusual. Burroughs v. Bunch, Tex.Civ.App., 210 S.W.

2d 211. The rule is the same in cases of life insurance. Sims Motor-Transport Lines, Inc. v. Davis, 126 Ind.App. 344, 130 N.E.2d 82. A suit will lie for a breach of the obligation to procure insurance. Dufton v. Mechanick's Nat. Bank, 95 N.H. 299, 62 A.2d 715; Johnson v. Holmes Tuttle Lincoln-Mercury, Inc., 160 Cal.App.2d 290, 325 P.2d 193; Dahlhjelm Garages v. Mercantile Ins. Co. of America, 149 Wash. 184, 270 P. 434; Atlas Auto Finance Co. v. Atkins, 79 Ga.App. 91, 53 S.W.2d 171.

Justification for the failure to conform to the contract is sought by proof that Marotta was above sixty-five years of age and that plaintiff was a corporate purchaser instead of an individual. These may be reasons for an insurance company to decline issuance of a policy, but they are not reasons that a finance company can make a new contract between buyer and seller. Neither the finance company, Mitchell Motors, nor the insurer could unilaterally make a new agreement for the parties. This is as true with respect to the agreement to procure life insurance as it is with respect to the kind of car sold, the amount of the purchase price, the amount of the trade-in allowance, or the amount of the monthly payments.

■ If insurance is sought and declined, the remedy is not for one party to create a new agreement, but "to notify the owner of the property in the event of failure of such attempt to procure insurance." Feldmeyer v. Engelhart, 54 S.D. 81, 222 N.W. 598, 599; Burroughs v. Bunch, 210 S.W. 2d 211, 214. Mitchell Motors suggests in its brief that the insurance was declined for good cause, since the corporation had no insurable interest in its president. In this it is in error. Sec. 3.49 Ins.Code, Vernon's Tex.Civ.Stats.; McBride v. Clayton, 140 Tex. 71, 166 S.W.2d 125; 21 Tex.Law Rev. 648.

The judgment is affirmed.