**GARY SAFE COMPANY, Appellant,**

**v.**

**A. C. ANDREWS CO., INC., Appellees.**

**No. 19537.**

Court of Civil Appeals of Texas, Dallas.

May 31, 1978.

Rehearing Denied June 27, 1978.

---

Ralph I. Miller, Nancy L. Benoit, Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

Wm. T. Andress, Jr., Dallas, for appellees.

AKIN, Justice.

This is an appeal by Gary Safe Company from a judgment granting A. C. Andrews Co., Inc. recovery of $78,125.66 for sales commissions based upon an alleged contract. The judgment also provides that Andrews is entitled to future sales commissions on all sales made by Gary to the Southland Corporation. The trial court found that a letter sent by Gary to Andrews stating that Gary would pay $25 to Andrews for each unit sold Southland became a binding contract by tacit acceptance by Andrews. The court also found that under this contract Andrews was entitled to a commission of $25 per unit for the life of the relationship between Gary and Southland. Gary Safe attacks the judgment on the grounds that there was no consideration on the part of Andrews and that even if consideration existed, Gary Safe could terminate the alleged contract at will. We hold that no consideration flowed to Gary Safe and that, consequently, no binding contract existed between the parties. Accordingly, we reverse and render.

Before the transaction now in question, Gary Safe, a manufacturer, had sold safes to Andrews Company for resale, although no agreement existed between Gary Safe and Andrews with respect to a designation of Andrews as a distributor or authorized dealer for safes manufactured by Gary. In the early 1960's, Andrews commenced selling floor safes to Southland Corporation for their convenience stores, using Gary Safe as the supplier. In 1972, Southland requested Andrews to make a particular under-the-counter safe with a money drop for use in Southland's stores. Gary Safe manufactured this particular safe, designated as Model 3421, according to specifications requested by Andrews. Between 1972 and 1973, Southland purchased 443 of these units through Andrews, with a gross profit to Andrews of $57.50 per unit.

In December 1973, Andrews learned that Gary Safe had contacted Southland proposing to sell safes directly to Southland. Andrew's president, A. C. Andrews, then protested in a letter to Gary that "one of the best ways to mess up a good deal for everybody is for different people from a producer-selling organization to call on personnel with a buying-using corporation." In response, Gary Safe gave assurance that it would not seek to deal with Southland directly. No contention is made by Andrews that these letters constitute a contract. In January 1974, however, Gary Safe wrote the following letter, which is now alleged to have resulted in a binding contract:

Mr. A. C. Andrews
A. C. Andrews Company
Dallas, Texas
Dear Doc:

Enclosed is a copy of a letter to Mr. Pobilatti of the Southland Corporation. After several telephone conversations he seemed to be satisfied with the prices quoted in our letter to him.

From the prices quoted we will pay you a commission as follows:

A flat $25.00 on each unit known as model 3421, now used by their stores. A commission of 5% for all other safe equipment, the 5% to be figured on the prices at which we sell Southland Corporation.

I have seen no other way to go on this, Doc, and I hope it works out alright.

Sincerely,
Gary Safe Company
Allen Royce

The trial court found that this letter was an offer which implied a "tacit understanding" that Andrews would not interfere with Gary's direct sales to Southland, and that when Andrews accepted the specified commissions it became a contract binding on Gary as long as Gary should sell safes to Southland. Nevertheless, the trial court also found that Andrews made no promises to perform service, to refrain from competing, or to do or refrain from doing anything as consideration for the commission payments. Additionally, the trial court found

that Gary Safe had the right to sell directly to Southland prior to the January 1974 letter and that all payments of commission were made by Gary Safe to Andrews through November 22, 1974 at which time Gary Safe terminated Andrews' commission payments.

■ Appellant Gary Safe contends that the trial court erred in concluding that a "tacit understanding" that Andrews would not interfere with Gary's direct sales to Southland Corporation constitutes consideration for the January 21, 1974, letter because this tacit understanding is inconsistent with the trial court's finding of fact that no promises were made on behalf of Andrews to perform any services, to refrain from competing, to compromise any disputes, or to do or refrain from doing anything in return for these "commission" payments, and that there were no negotiations concerning the commission arrangement. Appellant concludes that these findings negate consideration flowing to Gary. We agree. In the absence of any benefit to the promisor or detriment to the promisee legally derived from the promise sought to be enforced, there is no consideration, and hence no contract. E. g., Champlin Petroleum Co. v. Pruitt, 539 S.W.2d 356, 361 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.); Sanders v. Republic National Bank of Dallas, 389 S.W.2d 551, 555 (Tex.Civ.App.—Tyler 1965, no writ). Therefore, the trial court's finding that no promises were made on behalf of Andrews is inconsistent with the conclusion that there existed a "tacit understanding" whereby Andrews would not interfere with Gary's direct sales to Southland. This finding of no promise on the part of Andrews is inconsistent also with the court's conclusion of law that the relinquishment by Andrews of its established customer, Southland, to direct sales by Gary, and the surrender of a varying profit in exchange for fixed commission constituted consideration for the commission arrangement. Indeed, Andrews could not point to any promise he made in return for the commission. Even if Andrews Company had some interest in selling to Southland that it could relinquish or surrender,

no promise of relinquishment or surrender was given in return for the commission payments. Since the trial court's finding conflicts with the conclusions of law, the findings of fact must control, Howth v. French Independent School District, 115 S.W.2d 1036, 1039 (Tex.Civ.App.—Beaumont 1938), aff'd, 134 Tex. 211, 134 S.W.2d 1036 (1940). Consequently, no consideration existed for Gary's agreement to pay commissions.

Finally, the trial court's conclusions of law are also inconsistent. The trial court correctly concluded that Gary Safe had a legal right prior to 1974 to sell directly to Southland Corporation without paying any compensation to the Andrews or Andrews Company but then erroneously concluded that Andrews Company relinquished its established customer when clearly Gary could have sold directly to Southland regardless of any agreement.

■ The most that can be made of the alleged offer is that it showed an intention by Gary to pay the commission specified in order to induce Andrews not to compete in making direct sales to Southland, but that the arrangement should not bind either party. Any promise, either expressed or implied by Andrews not to compete in the future would have been of doubtful validity under the antitrust law, Tex.Rev.Civ.Stat. Ann. art. 7428 (Vernon 1960). Consequently, there was no consideration for any supposed obligation by Gary to continue paying the commissions.

For these reasons, we hold that the court erred in concluding that a binding contract existed. Accordingly, we reverse the judgment of the trial court on the counterclaim, and here render judgment that Andrews take nothing.