Motion for Rehearing Granted; Opinion of January 25, 2007, Withdrawn;
Affirmed; and Memorandum Opinion on Rehearing filed March 29, 2007








 

Motion
for Rehearing Granted; Opinion of January 25, 2007, Withdrawn; Affirmed; and Memorandum Opinion on Rehearing filed March 29,
2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00055-CV

____________

 

BDB INTERESTS, L.C. D/B/A GULF
COAST NISSAN AND STEVE BLANCHARD NISSAN, Appellant

 

V.

 

ARCADIA FINANCIAL LTD., Appellee

 



 

On Appeal from the County
Court at Law No. 1 and Probate Court

Brazoria County, Texas

Trial Court Cause No. CI031973

 



 

M E M O R A N D U M   O P I N I O N   O N   R E H E A R I N G

We grant appellee=s motion for
rehearing, withdraw the opinion issued on January 25, 2007, and issue the
following substitute memorandum opinion.

In a single issue, appellant BDB Interests, L.C., doing
business as Gulf Coast Nissan and Steve Blanchard Nissan (collectively AGulf Coast@), appeals from a
summary judgment granted in favor of Arcadia Financial Ltd. (AArcadia@) for breach of
contract.  We affirm.








I.  Factual and Procedural Background

Gulf Coast, a car dealer, entered into a AMaster Dealer
Agreement@ (AMDA@) with Arcadia, a
financing company, under which Gulf Coast agreed to assign retail sales
installment contracts arising from car sales (ACustomer
Obligations@) to Arcadia.  Under certain circumstances outlined in
the MDA, however, Arcadia could demand Gulf Coast  repurchase Customer
Obligations.  This appeal concerns a breach of contract action by Arcadia
against Gulf Coast for failure to repurchase a Customer Obligation under the MDA.









On September 3, 2002, Robert C. Jackson and his wife, Sarah
M. Jackson, acting as his attorney-in-fact under a durable power of attorney,
purchased a car from Gulf Coast (the AJackson contract@), though Mr.
Jackson was not present during the sale process.  Mrs. Jackson financed the
car, and, in its role as an agent for Servco Life Insurance Company (AServco@), Gulf Coast
included in the financing agreement an option to purchase credit life insurance
that would cover any remaining payments on the vehicle if the policyholder
died.  Mrs. Jackson chose to purchase the insurance in Mr. Jackson=s name for
$1,098.61, which Gulf Coast added to the sales price and included in
calculating payments under the financing agreement.  Though the record contains
no copy of the Servco insurance policy, the parties appear to agree the policy
had a sixty-five-year age limit, and they do not dispute that Mr. Jackson was
seventy-three years old at the time of the purchase.  Mrs. Jackson testified
that Gulf Coast never mentioned an age limit for the policy or that her husband
may have exceeded such limit.  Gulf Coast does not dispute this claim but
maintains Mrs. Jackson withheld her husband=s age.[1] 
Mrs. Jackson asserts that during the closing, she gave Gulf Coast a copy of Mr.
Jackson=s Texas driver=s license.  Gulf
Coast admits it had possession of the license but claims it did not realize
during the closing that Mr. Jackson exceeded the age limit for the policy. 
Mrs. Jackson never received a copy of a credit life insurance policy.  After
the closing, pursuant to the MDA, Gulf Coast assigned the Jackson contract to
Arcadia.  In return, Arcadia paid Gulf Coast the required consideration under
the MDA, including the amount earmarked for the insurance. 

On November 19, 2002, less than three months after the
sale, Mr. Jackson died from AAdvanced Alzheimer=s@ disease.  On
November 30, 2002, without notifying Mrs. Jackson, Gulf Coast made out a check to
Arcadia refunding the $1,098.61 premium for Mr. Jackson=s insurance policy.  The following
month, on December 2 or 3, 2002, Mrs. Jackson went to Gulf Coast seeking to
collect on the insurance policy.  According to Mrs. Jackson, the finance
manager at Gulf Coast informed her for the first time that no policy ever issued
for Mr. Jackson because he exceeded the policy=s age limit.  Gulf
Coast concedes it never forwarded the premium to an insurance company to pay
for a policy on Mr. Jackson.  Mrs. Jackson also claims the finance manager said
she would send the insurance premium back to Arcadia.  After her visit to Gulf
Coast, Mrs. Jackson said she repeatedly contacted Gulf Coast to confirm whether
the finance manager had in fact sent the premium to Arcadia, but Gulf Coast
employees Aput [her] off many, many times.@  According to
Mrs. Jackson, Gulf Coast failed to notify her it had sent the insurance premium
to Arcadia or otherwise had not sent the premium to the insurance company to
purchase the policy.  Arcadia received the refund check on February 4, 2003 and
applied the amount to reduce the principle balance on Mrs. Jackson=s account.








Mrs. Jackson continued making payments to Arcadia through
September 2003 but subsequently defaulted.   In February 2004, Arcadia informed
Gulf Coast that, according to its records, Mrs. Jackson had purchased a credit
life insurance policy from Servco, but such policy had been cancelled because
Mr. Jackson exceeded the age limit.  Arcadia said Mrs. Jackson repeatedly told
its representatives that Servco never contacted her in writing to inform her it
cancelled the policy, and, as a result, she refused to make further payments on
the Customer Obligation.  Arcadia therefore demanded under the MDA that Gulf
Coast repurchase the Jackson contract, alleging the following circumstances in
the MDA had occurred:  (1) the car buyer asserted a valid claim or defense
against Arcadia that the buyer could assert against Gulf Coast, (2) certain
warranties Gulf Coast made to Arcadia under the MDA proved untrue, and/or (3)
Gulf Coast took, or failed to take, action affecting the validity or
enforceability of the Jackson contract in the reasonable judgment of Arcadia.

After Gulf Coast refused to repurchase the Jackson
contract, Arcadia sued Gulf Coast for breach of the MDA under the above
provisions.  Gulf Coast filed a no-evidence motion for summary judgment,
alleging Arcadia put forth no evidence of breach or damages.  Arcadia responded
with a traditional motion for partial summary judgment, contending no fact
issues existed on the issues of breach and damages.  The trial court denied
Gulf Coast=s no-evidence summary judgment and granted Arcadia=s summary judgment
without specifying any grounds.

Gulf Coast now contends the trial court erred in granting
summary judgment for Arcadia because no evidence exists that Gulf breached the
MDA or that Arcadia incurred any damages as a result of Gulf Coast=s alleged breach. 

II.  Standard of Review








The standard of review for a traditional motion for summary
judgment is whether the successful movant at the trial level carried its burden
of showing that there is no genuine issue of material fact and that judgment
should be granted as a matter of law.  See Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  The movant must
conclusively establish all essential elements of his cause of action as a
matter of law to be entitled to summary judgment.  City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  Evidence is conclusive
only if reasonable people could not differ in their conclusions.  City of
Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  Once the movant
establishes its right to summary judgment as a matter of law, the burden shifts
to the non‑movant to present evidence raising a genuine issue of material
fact, thereby precluding summary judgment.  Clear Creek Basin Auth., 589
S.W.2d at 678B79.  Under this traditional standard, this court must
take as true all evidence favorable to the nonmovant and must make all
reasonable inferences in the nonmovant=s favor.  See
id. 

When the trial court does not specify the basis for its
summary judgment, we will affirm the judgment if any one of the theories
advanced in the motion is meritorious.  Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004).  In other words, the appealing party must show
each independent ground alleged is insufficient to support the summary judgment
granted.  See Star‑Telegram, Inc. v. Doe, 915 S.W.2d 471, 473
(Tex. 1995).

III.  Analysis

The elements in a breach of contract claim include: (1) the
existence of a valid contract, (2) the plaintiff performed or tendered
performance, (3) the defendant breached the contract, and (4) the plaintiff was
damaged as a result of the breach.  Frost Nat=l Bank v. Burge, 29 S.W.3d 580,
593 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  The parties do
not dispute the existence of a valid contract or performance.  Rather, they
dispute whether Gulf Coast breached the MDA by failing to repurchase the
Jackson contract and whether Arcadia suffered any damages from an alleged
breach.  We address these issues in turn.   

          A. 
Breach of Contract 

Section 6 of the MDA enumerates various circumstances under
which Gulf Coast must repurchase Customer Obligations from Arcadia.  In its
motion, Arcadia claimed Gulf Coast breached its obligation to repurchase the
Jackson contract after the circumstances in sections 6(b), (c), and (d)
occurred.  We must determine whether one of these provisions constitutes a
proper basis for the trial court to have granted summary judgment for breach of
contract.  See Joe, 145 S.W.3d at 157.








We first address whether the trial court could have
properly granted summary judgment for breach under Section 6(d).  That section
requires Gulf Coast to repurchase a Customer Obligation where A[Gulf Coast] has
taken or takes any action or fails to take any action of any kind which affects
the validity or enforceability of the Customer Obligation in the reasonable
judgment of Acadia.@  As a threshold matter, we note that the
language of Section 6(d) is akin to a Asatisfaction
clause,@ and, accordingly,
we apply the relevant law governing such clauses.  See Young v. Neatherlin,
102 S.W.3d 415, 420 (Tex. App.CHouston [14th Dist.] 2003, no pet.)
(applying satisfaction clause principles to provision in contract for sale and
transport of homes that allowed seller to deem contract void and grant refund
if, in seller=s Aopinion,@ obstacles and/or
circumstances made delivery of houses infeasible); see also Commc=ns Transmission,
Inc. v. Tristar Commc=ns, Inc., 798 F. Supp.
406, 408 (W.D. Tex. 1992) (applying Texas law and holding that contract
provision stating that one party had right to terminate contract if, based on
that party=s Asole and exclusive determination,@ other party=s service became Aunacceptable,@ constituted type
of satisfaction clause).  In cases involving satisfaction clauses, A[t]he general rule
is that the judgment of the party regarding the adequacy of performance will be
upheld if made in good faith.@  Black Lake Pipe Line Co. v. Union
Constr. Co., 538 S.W.2d 80, 88 (Tex. 1976).  Where the contract grants one
of the contracting parties the ultimate authority to determine whether a
satisfaction clause has been satisfied, the Texas Supreme Court has adopted an
objective, reasonableness standard for reviewing whether that party made its
determination in good faith.  See Tex. Dep=t of Transp. v.
Jones Bros. Dirt & Paving Contractors, Inc., 92 S.W.3d 477,
481 (Tex. 2002); see also Cranetex, Inc. v. Precision Crane & Rigging of
Houston, Inc., 760 S.W.2d 298, 302 (Tex. App.CTexarkana 1988,
writ denied).  This standard does not seek to determine the actual mental
satisfaction of the party making the determination; rather it examines whether
the performance would satisfy a reasonable person.  See Cranetex, 760
S.W.2d at 302. 








Arcadia contends it exercised reasonable judgment in
determining that Gulf Coast took or failed to take action affecting the
validity or enforceability of the Jackson contract because Gulf Coast failed to
(1) make an effort to purchase a life insurance policy on Mr. Jackson, namely
by failing to forward the premium to an insurance company, and (2) inform Mrs.
Jackson that no insurance policy issued on Mr. Jackson until after he died and
she attempted to confirm coverage.[2] 
Therefore, Arcadia maintains that Gulf Coast, in refusing to repurchase the
Jackson contract, breached its obligation under Section 6(d) as a matter of
law.  Gulf Coast counters that fact issues remain over whether Gulf Coast=s actions or
inactions were improper and whether Arcadia=s determination
was reasonable, given Mrs. Jackson=s potentially Aunreasonable@ actions and
assumptions regarding the purchase of the vehicle and the insurance coverage. 
Gulf Coast asserts that Mr. Jackson merely applied for insurance, and, because
he failed to qualify, Gulf Coast accordingly forwarded the premium to Arcadia
to reduce the principal amount owed.  Thus, Gulf Coast concludes the Jackson
contract remains valid and enforceable because Arcadia still has all its rights
and remedies under the contract against Mrs. Jackson.  Gulf Coast further
reasons that Aif Mrs. Jackson=s actions were
unreasonable . . . , then Arcadia=s judgment as to
the affect [sic] of Gulf Coast=s actions on the validity and
enforceability of the Jackson contract was likewise unreasonable.@








Considering the summary judgment record, we conclude Gulf
Coast has failed to raise a fact issue as to whether Arcadia acted reasonably
in determining that Gulf Coast took or failed to take action affecting the
validity or enforceability of the Jackson contract under Section 6(d) and thus
whether Gulf Coast breached its obligation to repurchase under that provision. 
The uncontroverted evidence reveals that Arcadia demanded that Gulf Coast
repurchase the Jackson contract after Mrs. Jackson defaulted.  The evidence
further shows Mrs. Jackson defaulted because of her inaccurate assumptions
regarding the credit life insurance, which were due in large part to Gulf Coast=s action or
inaction.  For example, it is undisputed that Gulf Coast failed to inform her
that no policy issued until after she came to the dealership seeking to collect
on such policy.  Significantly, Mrs. Jackson provided Gulf Coast Mr. Jackson=s driver=s licenseCclearly reflecting
his disqualifying ageCduring the sales process some three months
before she came to collect on the policy.  Moreover, after she learned no
policy had issued, Mrs. Jackson never received final word from Gulf Coast on
whether it refunded the insurance premium to Arcadia or forwarded the premium
to an insurance company to purchase a policy on Mr. Jackson.  As a result, Mrs.
Jackson testified that she presumed, albeit inaccurately, that an insurance
policy she paid for would cover the remaining payments.  As such, the evidence
shows that Gulf Coast=s repeated, uncontroverted failures to
inform Mrs. Jackson as to the status of the credit life insurance policy
directly influenced her default on the contract with Arcadia and affected
Arcadia=s ability to
enforce the contract.[3]
 Therefore Arcadia presented evidence that it acted reasonably in
determining that Gulf Coast took action or inaction affecting the validity or
enforceability of the Jackson contract and thus demanding repurchase from Gulf
Coast. See Anahuac, Inc. v. Wilkes, 622 S.W.2d 634, 637 (Tex. App.CAustin 1981, no
writ) (holding that general contractor was justified in terminating contract
pursuant to satisfaction clause for its dissatisfaction with work of
subcontractor because of undisputed inaccuracies in subcontractor=s construction
work).  Compare Cranetex, Inc. v. Precision Crane & Rigging of Houston,
Inc., 760 S.W.2d 298, 302 (Tex. App.CTexarkana 1988,
writ denied) (holding that dissatisfaction was unreasonable because record
showed Ano bona fide basis
for dissatisfaction@).      








Furthermore, Gulf Coast=s bare assertion
that Arcadia continues to possess rights and remedies under the Jackson
contract fails to create a genuine issue of material fact regarding whether
Arcadia acted unreasonably in determining that Gulf Coast=s actions or
inactions affected the validity or enforceability of the contract.  See
Clear Creek Basin Auth., 589 S.W.2d at 679.  Gulf Coast=s additional
contentions focus solely on Mrs. Jackson=s conduct and
disregard its own uncontroverted actions and omissions throughout the sales
process and thereafter on which Mrs. Jackson relied.  Therefore, we conclude
the summary judgment evidence establishes Arcadia acted reasonably in
determining that Gulf Coast took action or inaction affecting the validity and
enforceability of the Jackson contract and therefore demanding Gulf Coast
repurchase the contract under 6(d).  Because such demand compelled Gulf Coast
to repurchase the Jackson contract under Section 6(d), its failure to do so
constituted a breach of the MDA as a matter of law.  Accordingly, we hold that
the trial court could have properly granted summary judgment on this ground.  

Because we conclude Section 6(d) constituted a proper basis
for summary judgment on the element of breach, we need not address the other
potential grounds.  See Joe, 145 S.W.3d at 157.

B. 
Causation and Damages








Gulf Coast additionally asserts that Arcadia did not suffer
any damages because Arcadia is a secured creditor and may pursue various
remedies against Mrs. Jackson for defaulting.  Gulf Coast argues that any
actions or omissions it may have made as to the Jackson contract did not cause
or contribute to Arcadia=s damages.  Gulf Coast maintains, rather,
that Mrs. Jackson=s own representations, actions, and
fraudulent conduct resulted in her default on the Customer Obligation and
thereby caused Arcadia=s damages.  Arcadia counters that Section
10 of the MDA expressly provides that Arcadia need not Aexhaust its rights
and remedies under [the Jackson contract] or against other persons or
collateral before being entitled to payment in accordance with the Dealer=s obligations
hereunder.@  Additionally, Arcadia asserts that the parties
stipulated to the amount of damages as the repurchase value of a Customer
Obligation as defined by the MDA.  Arcadia contends that such damages arose
from Gulf Coast=s failure to repurchase the Jackson
contract in breach of the MDA.  We agree with Arcadia.  

Gulf Coast=s contention that Arcadia has shown no
damages because it possesses remedies as a secured creditor ignores the express
language of Section 10 of the MDA, which provides that Arcadia need not pursue
any potential remedies under the Jackson contract or against any person or Acollateral.@  Moreover,
parties to a contract may stipulate to the amount of damages to be recovered in
the event of a breach.  Aguiar v. Segal, 167 S.W.3d 443, 455 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied).  Such an agreement binds the parties and furnishes
the measure of damages.  Id.  As noted, Arcadia established Gulf Coast=s obligation to
repurchase the Jackson contract under MDA Section 6(d).  In the event Gulf
Coast must repurchase a Customer Obligation like the Jackson contract under
Section 6, that section expressly provides for the amount Gulf Coast Awill@ pay Arcadia  

the unpaid balance of the Customer Obligation, plus any expenses of
collection incurred by Arcadia after default by the Dealer, including attorneys= fees, less the unearned portion of
the original finance charge included in the Customer Obligation . . . and [such
amount] shall bear interest . . . from the date Arcadia requests repurchase
until paid in full. 

Arcadia
sought as damages an amount Anot less than the unpaid principal balance
on the [Jackson] Contract, plus accrued and unpaid interest, and loan fees,@ as well as
reasonable attorneys= fees and court costs.  This amount
derives from the express language in the MDA concerning the amount Gulf Coast
must pay in the event of a repurchase, and Gulf Coast has offered no evidence
to controvert this amount.  Accordingly, we conclude there is no fact issue
regarding causation or damages and hold that the trial court properly granted
summary judgment on this ground.   








Accordingly, we overrule Gulf Coast=s sole issue and affirm the trial
court=s judgment.  

 

 

 

/s/      Leslie B. Yates

Justice

 

 

Judgment rendered and Opinion of January 25, 2007,
Withdrawn, and Memorandum Opinion on Rehearing filed March 29, 2007.

 

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.









[1]  Gulf Coast offers no proof in support of this contention and in the trial court claimed such issue Ais relevant . . . only in that Mrs. Jackson held a
durable power of attorney for her husband, Robert.@  





[2]  We note that Arcadia expressly addressed Section
6(d) to this court for the first time on rehearing, omitting it in briefing on
direct appeal.  However, because Arcadia presented this provision to the trial
court in its motion for summary judgment, we will address its arguments
concerning this section.





[3]  We note that such failures may also give Mrs.
Jackson a cause of action against Gulf Coast for breach of an agreement to
procure insurance.  See May v. United Serv. Ass=n of Am.,
844 S.W.2d 666, 669 (Tex. 1992) (recognizing that insurance agent who undertakes
to procure insurance for another owes duty to clients to use reasonable
diligence in attempting to place requested insurance and to inform clients
promptly if unable to do so); O.R. Mitchell Motors, Inc. v. Joe Marotta
& Sons, Inc., 358 S.W.2d 741, 743 (Tex. Civ. App.CSan Antonio 1962, no writ) (holding that car dealer
agreed to procure credit life insurance for car buyer by explicitly adding
insurance premium to sales price of car and that dealer breached agreement by
failing to procure insurance and inform buyer of such failure); see also
Powell v. Narried, 463 S.W.2d 43, 45  (Tex. Civ. App.CEl Paso 1971, writ ref=d n.r.e.) (AThe failure of an agent . . . , even after the
exercise of reasonable diligence to procure insurance, to notify the insured of
the agent=s inability to obtain insurance, will likewise impose
liability upon [the agent].@).